IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

DONNA LYNN KALB,

               Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

             Defendant.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 17-5262 (JBS)

**OPINION**

---

APPEARANCES:

Robert Anthony Petruzzelli, Esq.
JACOBS, SCHWALBE & PETRUZZELLI, PC
Woodcrest Pavilion
10 Melrose Avenue, Suite 340
Cherry Hill, NJ 08003
    Attorney for Plaintiff

Heather Tashman Fritts, Special Assistant U.S. Attorney
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 Spring Garden Street, 6th Floor
Philadelphia, PA 19123
    Attorney for Defendant

**SIMANDLE**, District Judge:

## I.    INTRODUCTION

This matter comes before the Court pursuant to 42 U.S.C §

405(g) for review of the final decision of the Commissioner of

the Social Security Administration ("SSA") denying the

application of Plaintiff Donna Lynn Kalb ("Plaintiff") for

Social Security Disability Benefits and Supplemental Security

Income under Title II and XVI of the Social Security Act, 42

U.S.C. § 401 et seq. Plaintiff, who suffers from diabetes, neuropathy, and lupus, was denied benefits for the period of disability from March 20, 2013, the alleged onset date of disability, to January 15, 2016, the date on which the Administrative Law Judge ("ALJ") issued a written decision.

In the pending appeal, Plaintiff contends that the ALJ's decision must be reversed and remanded on three grounds. To that end, Plaintiff contends that the ALJ erred by: (1) failing to properly evaluate and weigh the medical evidence of record, including the opinions of Plaintiff's treating physician; (2) failing to make a finding of disability based on the existence of a listing level impairment consistent with Listing 1.04 in the Listings of Impairments; and (3) failing to consider all of Plaintiff's impairments in assessing her Residual Function Capacity ("RFC"). For the reasons that follow, the Court will affirm the ALJ's decision.

## II. BACKGROUND

### A. Procedural History

Plaintiff filed an application for Social Security Disability Benefits on April 16, 2013 (R. at 240-44), and an application for Supplemental Security Income on April 24, 2013 (R. at 245-50), alleging a disability onset date of March 20, 2013. Plaintiff's claim was denied by the SSA on July 15, 2013. (R. at 175-80). Her claim was again denied upon reconsideration

2

on December 16, 2013. (R. at 185-90.) A hearing was held before ALJ Karen Shelton on November 24, 2015. (R. at 48-118.) The ALJ issued her opinion on January 15, 2016, denying benefits. (R. at 23-47.) On May 17, 2017, the Appeals Counsel denied Plaintiff's request for review. (R. at 3-8.) This appeal timely follows.

**B.    Personal and Medical History**

Plaintiff was 50 years old on the alleged disability onset date and 52 years old at the time of her hearing before the ALJ. (R. at 61.) She graduated from high school and subsequently earned a degree in office automation. (R. at 65.) Plaintiff subsequently worked for several years at various law firms, before spending ten years as a foreclosure coordinator at a mortgage company. (R. at 66-67.) In late 2012, Plaintiff left the mortgage company to work at a mortgage foreclosure law firm that laid her off in March 2013. (R. at 69-70, 73-74.) She then reapplied to work at the mortgage company she had previously left, but the mortgage company decided not to hire her back. (R. at 74.) Plaintiff then collected unemployment benefits while looking for other jobs. (R. at 75-76.) She has not worked since.

Plaintiff was diagnosed with lupus in 1993 (R. at 406), which was in remission until sometime in 2012. (R. at 433.) She was also diagnosed with diabetes mellitus in November 2012. (Id.)

On March 22, 2013, Plaintiff visited Dr. Vincent Savarese, M.D., an endocrinologist, for a follow up relating to poor glycemic control. (R. at 421.) Dr. Savarese observed that Plaintiff's blood glucose control was improving and that she had been working hard on diet and exercise. (Id.) Plaintiff complained of persistent lower extremity pain and reported that she had been recently laid off. (Id.) Dr. Savarese noted a "[m]arked improvement" in Plaintiff's diabetes and recommended "no changes for now but instructed on dose titration of both insulin, particularly decreasing NovoLog with meals if having frequent postprandial hypoglycemia," as well as to "[c]ontinue to work on diet and exercise. (Id.)

On April 12, 2013, Dr. Savarese observed that Plaintiff had full muscle strength in her upper and lower extremities with no atrophy noted. (R. at 437.) He also assessed Plaintiff with having diabetic peripheral neuropathy and prescribed her with 60mg Cymbalta per day. (R. at 438.) The following month, Plaintiff returned to Dr. Savarese who observed that Cymbalta improved her symptoms, though her neuropathic pain remained present. (R. at 433.) Dr. Savarese also noted that Plaintiff's lupus was no longer in remission. (Id.)

A September 6, 2013 MRI of Plaintiff's **lumbar** spine revealed: a disc herniation at L4-L5 indenting the ventral thecal sac; disc herniation and disc bulge at L3-L4 also

indenting the ventral thecal sac; L3-L4 lateral recess and
bilateral neural foramina with the disc contacting the exiting
right L3 nerve root; disc bulge at L5-S1 indenting the ventral
thecal sac; and straightening of the normal lordosis. (R. at
617.) An MRI of Plaintiff's **cervical** spine showed: a disc
herniation at C3-C4 indenting the ventral thecal sac; disc
bulges at C5-C6 and C6-C7 indenting the ventral thecal sac;
narrowing bilateral neural foramina; and straightening of the
normal lordosis. (R. at 619.)

From November 15, 2013 through July 15, 2015, Plaintiff
attended pain management with RA Pain Services of Cherry Hill,
consistently complaining of neck, lower back, and generalized
joint pain. (R. at 702-58, 799-895.) On several occasions, she
was noted as using a cane to ambulate. (R. at 705, 715, 721,
727, 738, 744, 750, 756, 802, 808, 815, 821, 827, 834, 841, 848,
862, 868, 874, 880, 886, 892.) On examination, Plaintiff had
normal muscle strength and tone, and she was able to walk on her
heels and toes. (Id.) On March 24, 2014, Plaintiff complained of
diffuse pain from her neck down with some numbness traveling to
her arms and legs, but was told she was not a surgical candidate
for her cervical spine degenerative changes. (R. at 718.) By
August 2014, Plaintiff reported she was "hanging in there" and
doing well with her current medication regimen. (R. at 877.)

On March 5, 2014, Dr. Savarese prepared a physical residual functional capacity assessment wherein he opined that Plaintiff's symptoms would frequently interfere with her attention and concentration required to perform simple work-related tasks; she would not be required to lie down during a workday in excess of her normal breaks or lunch; she could walk a half a block before needing to rest; she could sit and stand/walk for five minutes each at one time; she would need a job which permits shifting positions from sitting, standing, or walking; she would need to take two or three unscheduled breaks during an eight-hour workday; she could occasionally lift less than 10 pounds; and she would likely be absent once or twice a month. (R. at 976-78.) Ultimately, Dr. Savarese opined that Plaintiff was capable of working an eight-hour workday, five days a week with the limitations noted. (R. at 977.)

On or before March 19, 2014, Plaintiff started treating with Dr. James Dwyer, D.O., a rheumatologist. (R. at 966-68). On October 22, 2014, Plaintiff reported to Dr. Dwyer that "since last seen, she is doing somewhat better," but that she remains uncomfortable and fatigued. (R. at 961.) On examination, Dr. Dwyer noted that Plaintiff walked with a normal gait, had no swelling, warmth, or erythema in her joints, had a full range of motion in all joints with the exception of generalized tenderness in her upper and lower extremities with some light

touch sensation changes in her lower extremity consistent with known diabetic neuropathy. (R. at 961.)

On February 9, 2015, Plaintiff revisited Dr. Dwyer, who this time noted that Plaintiff was taken off steroids because of problems with her diabetes and recent laboratory studies, which demonstrated improvement in her inflammatory markers. (R. at 959.) Plaintiff also reported to Dr. Dwyer that her depression had improved with Cymbalta. (Id.) On examination, Dr. Dwyer again noted that Plaintiff walked with a normal gait, had no swelling, warmth, or erythema in her joints, had full range of motion in all joints with the exception of pain with range of motion in her lower extremity from her lumbar spine, and had full range of motion in her cervical spine with no specific tenderness. (R. at 959.)

A June 3, 2015 MRI of Plaintiff's **cervical** spine revealed: disc bulges at C4-C5 and C5-C6 that were associated with bilateral facet hypertrophy and encouragement of the neural foramina, as well as a partial fusion anomaly in the C2 odontoid and a probably thyroid module. (R. at 772.) An MRI of Plaintiff's **lumbar** spine showed: disc bulges at L3-L4 and L4-L5 associated with bilateral facet hypertrophy and encroachment of the neural foramina with moderate central disc herniation at L5-S1. (R. at 774.)

On August 10, 2015, Dr. Dwyer observed on physical examination that Plaintiff had a normal gait with no swelling, warmth, or erythema in any joints and full range of motion of all joints except for diffuse tenderness without localization. (R. 956.) Additionally, Dr. Dwyer noted that recent laboratory studies showed her lupus at the present time was negative. (Id.)

### C. State Agency Consultants

On June 25, 2013, Plaintiff visited Dr. Jonathan Wahl, M.D., for a consultative examination. (R. at 525-27.) During this examination, Plaintiff was "comfortable, anxiety free, and in no apparent distress." (R. at 525.) Plaintiff reported burning neuropathy in her lower extremities, hip pain, and dizziness caused by Type I diabetes, as well as depression with decreased sleep and increased appetite. (Id.) On examination, Dr. Wahl noted that Plaintiff had a fine tremor in both hands, and some discomfort with lumbar range of motion movements. (R. at 526.) Plaintiff could not perform heel-to-toe walking because of pain in her toes and heels and refused to squat. (Id.) Dr. Wahl opined that Plaintiff had minimal-to-moderate limitation for activities requiring heel-toe walking any more than infrequently, and that she had minimal-to-moderate limitation for prolonged ambulation. (Id.)

On July 17, 2013, Dr. Wahl prepared an addendum, wherein he noted that, while Plaintiff had somewhat decreased range of

motion in her elbows, she had full range of motion of both shoulders and wrists, and unimpaired functioning of both hands. (R. at 532.) Dr. Wahl observed that Plaintiff had no swelling, effusion, tenderness, heat, or deformity in her wrists or hands, and full range of motion in her knees, hips, and ankles. (Id.) He also noted that Plaintiff retained full motor strength in her upper and lower extremities with no atrophy or weakness. (Id.) Dr. Wahl opined that Plaintiff had no limitation in her ability to feel, finger, handle, or reach with a fine tremor in both hands; she could sit, stand, and walk for four hours each in an eight-hour work day; she could operate foot controls two and a half hours in an eight-hour day; she could lift and carry 11-20 pounds frequently to constantly; she could continuously climb stairs, ramps, ladders, and scaffolds with 15 minutes after one hour of activity; and her ability to balance, stoop, kneel, crouch, and crawl was unimpaired; but that she required positional changes and breaks of 15 minutes after one hour of standing, sitting, or walking. (R. at 533-34.) Dr. Wahl did not believe an assistive device was needed. (R. at 533.)

Dr. Jyorthsna Shastry, M.D., a State agency medical consultant, reviewed Plaintiff's medical records and assessed her physical residual functional capacity. (R. at 134-35.) Dr. Shastry opined that Plaintiff could perform light work with occasional stooping, kneeling, crouching, crawling, and climbing

ramps, stairs, ladders, ropes, or scaffolds. (Id.) Dr. Seung

Park, M.D., another State agency medical consultant, reviewed

Plaintiff's medical records and affirmed Dr. Shastry's physical

residual functional capacity in all respects.

### D.   Plaintiff's Activities

In an April 2013 Adult Function Report, Plaintiff reported

that she lived alone, cared for pets, tended to personal care,

prepared simple meals, washed laundry, cleaned when she could,

drove a car, shopped in stores, handled her personal finances,

watched television, and visited with friends and family at their

homes. (R. at 285-89.)

During a hearing held by the ALJ on November 24, 2015,

Plaintiff testified that she drove a car, prepared meals,

dressed herself, read books and magazines, played with her pets,

and shopped in stores. (R. at 285-89.) She also testified that

she has "extreme chronic pain" due to her lupus (R. at 77),

which she experiences 24 hours per day, 7 days per week. (R. at

114.) According to Plaintiff, she has flare ups of lupus that

occur four to five times per month, lasting anywhere from one to

three days. (R. at 85.) Since she was hospitalized in January

2013, Plaintiff reported that she has had "one flare after

another." (R. at 80, 89.) Plaintiff testified that she could

probably return to her prior job at the mortgage company,

subject to certain limitations. (R. at 106-07) (Q: Do you think

that if you got the job back at the mortgage place, that you'd be able to do it? A: As long as they could deal with me getting up and moving around all the time. Q: How often would that be? A: Probably every hour.).

### E. Vocational Expert Testimony

During Plaintiff's hearing in front of the ALJ, the ALJ also heard testimony from William Slaven, a vocational expert. (R. at 110-113.) Based on Plaintiff's testimony, the vocational expert classified her past work as a Delinquent Account Clerk, DOT 241.357-010, which is skilled work that is sedentary. (R. at 111.) The vocational expert opined that a person with Plaintiff's RFC could perform work as a Delinquent Account Clerk, both as listed in the DOT, and as it was actually performed by Plaintiff. (R. at 112-13.)

### F. ALJ Decision

In a written decision dated January 15, 2016, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act at any time between the alleged onset date of disability and the date of the ALJ's written decision because, consistent with Plaintiff's age, education, work experience, and RFC, she was capable of working in her past job as a delinquent account clerk. (R. at 39.)

At the first stage of the five-step sequential evaluation process, the ALJ determined that Plaintiff had not engaged in

substantial gainful activity since March 20, 2013, which was on
or around the date she stopped working. (R. at 28.) The ALJ also
noted that "the claimant applied for and received unemployment
benefits after the alleged onset date," which "shows that the
claimant was actively applying for work, claimed to be available
for work and held themselves out [to] another agency to be able
and willing to work during the adjudicative period." (R. at 28-
29.) "While acceptance of unemployment benefits in no way
impacts a medical determination of disability," the ALJ stated,
"such acceptance . . . impacts the claimant's overall
credibility regarding self-reported information." (R. at 29.)

Next, at step two, the ALJ determined that Plaintiff had
the following "severe" impairments: systemic lupus erythematous;
diabetes mellitus; and degenerative disc disease of the cervical
and lumbar spine. (Id.) The ALJ found Plaintiff's alleged
gastrointestinal issues to be "non-severe" because a February
2015 office visit and diagnostic imagery from April and May 2015
revealed "stable findings with normal gastric emptying," and
that "any gastrointestinal problems were either acute and of
short-duration, or asymptomatic and did not impose more than
minimal work-related limitations, and thus are non-severe."
(Id.) The ALJ also found that Plaintiff's medically determinable
mental impairments of depression and anxiety, considered singly
and in combination, "do not cause more than minimal limitation

in [Plaintiff's] ability to perform basic mental work activities
and are therefore non-severe." (Id.) The ALJ considered the four
broad functional areas set out in the disability regulations for
evaluating mental disorders and in section 12.00C of the Listing
of Impairments known as the "paragraph B" criteria, examined
Plaintiff's medical records and other relevant evidence, in
detail, and described the reasons she found Plaintiff's mental
health impairments to be "non-severe," including that Plaintiff
had received little treatment for these conditions and admitted
that she could perform her old job if allowed to stand and
stretch when needed (R. at 29-31.)

At step three, the ALJ concluded that none of Plaintiff's
impairments or combination of impairments met or medically
equaled the severity of one of the listed impairments in 20
C.F.R. Part 404, Subpart P, Appendix 1, including those set
forth in Listings 1.04, 11.14, and 14.02. (R. at 31.)

Between step three and step four, the ALJ determined that
Plaintiff possessed the RFC to perform "sedentary work," as
defined in C.F.R. §§ 404.1567(a) and 416.967(a), except that:

> [S]he can stand/walk 2 hours in an 8-hour workday; sit
> 6 hours in an 8-hour workday (but requires the
> opportunity to switch positions for 5 minutes per
> hour); lift/carry up to 10 pounds; occasionally climb
> ramps/stairs, but never climb ladders, ropes or
> scaffolds; occasionally stoop, kneel, crouch and crawl
> and occasionally use of [sic] foot controls/pedals.
> She cannot reach overhead or tolerate any exposure to
> extreme heat/cold. Finally, she can only occasionally

>     push/pull with the feet and requires a cane to
>     ambulate.

(R. at 31.)

In determining Plaintiff's RFC, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (R. at 32.) Although the ALJ found that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," she concluded that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. at 33.) In doing so, the ALJ analyzed the medical evidence in the record with respect to each of Plaintiff's impairments, as well as the opinions of various treating physicians and State agency medical consultants. (R. at 31-39.)

In crafting the RFC, the ALJ assigned "little weight" to the March 2014 Physical RFC Assessment prepared by Plaintiff's treating endocrinologist, Dr. Savarese, after finding "it is a gross overstatement of [Plaintiff's] mental health limitations, the limiting effect(s) of her experience of pain/other symptoms and her physical limitations," and, according to the ALJ, "[t]he record simply does not corroborate Dr. Saverese's opinion and does not reveal the amount or frequency of positional changes that would have been observed in office visits if [Plaintiff]

were limited as suggested in this opinion." (R. at 38.) The ALJ

also assigned "little weight" to the May 2013 Residual

Functional Capacity Questionnaire Jamie Strause prepared on

Plaintiff's behalf, because:

> [I]t is a gross overestimate of [Plaintiff's]
> functional limitations and is inconsistent with her
> broad range of daily activities, which suggests some
> difficulty with prolonged walking/standing, but does
> not reveal any difficulty with prolonged sitting (so
> long as she is given the ability to switch positions
> as set forth in the [RFC] above.

(R. at 37.) With respect to Ms. Strause, the ALJ further noted

that "as an advanced practice nurse, [she] is not an acceptable

medical source," and her opinion thus carries "no weight." (Id.)

(citing 20 C.F.R. §§ 404.1513, 416.913). Moreover, the ALJ

assigned "partial weight" to Dr. Wahl's opinions regarding

Plaintiff's ability to walk, stand, lift/carry, climb, stoop,

kneel, crouch, crawl, and sit, and "great weight" to Dr. Wahl's

opinions regarding her ability to operate foot controls and

tolerate environmental conditions because they are "consistent

with the record as a whole." (Id.) Furthermore, the ALJ assigned

"little weight" to three forms filled out by various treating

physicians which indicated that Plaintiff was unable to work

between February 2014 and November 2016 because "these forms do

not provide a function-by-function analysis of [Plaintiff's]

limitations" and "these opinions are on the issue of disability,

which is an issue that is reserved to the Commissioner." (R. at

38-39.) Finally, the ALJ assigned "partial weight" to the State agency medical consultants' opinions that Plaintiff could stand/walk 6 hours in an 8-hour workday, finding instead that Plaintiff "is best suited to a range of work at the sedentary exertional level," while giving "great weight" to their opinions with respect to Plaintiff's ability to climb ramps/stairs, stoop, kneel, crouch, and crawl because these limitations "are consistent with the record and [Plaintiff's] admissions regarding her daily activities." (R. at 38.)

Based on Plaintiff's RFC and the vocational expert's testimony from the November 24, 2015 hearing, the ALJ found, at step four, that Plaintiff was able to perform her past relevant work as a delinquent account clerk. (R. at 39.) Accordingly, the ALJ found that Plaintiff was not under a disability, as defined in the Social Security Act, from March 20, 2013 through the date of the decision. (Id.)

**III. STANDARD OF REVIEW**

This Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The Court's review is deferential to the Commissioner's decision, and the Court must uphold the Commissioner's factual findings where they are supported by "substantial evidence." 42 U.S.C. § 405(g); see also Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Cunningham v. Comm'r of Soc. Sec., 507 F. App'x 111, 114 (3d Cir. 2012). Substantial

evidence is defined as "more than a mere scintilla," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 400 (1971); see also Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (using the same language as Richardson). Therefore, if the ALJ's findings of fact are supported by substantial evidence, those findings bind the reviewing court, whether or not it would have made the same determination. Fargnoli, 247 F.3d at 38. The Court may not weigh the evidence or substitute its own conclusions for those of the ALJ. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011). Remand is not required where an error or oversight would not affect the outcome of the case. Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005).

## IV.  DISCUSSION

### A.  Legal Standard for Determination of Disability

In order to establish a disability for the purpose of disability insurance benefits, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." Plummer v. Apfel, 186 F.3d 422, 426 (3d Cir. 1999); 42 U.S.C. § 423(d)(1). A claimant lacks the ability to engage in any substantial activity "only if his physical or mental impairment or impairments are of such

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Plummer, 186 F.3d at 427–428; 42 U.S.C. § 423(d)(2)(A).

The Commissioner reviews claims of disability in accordance with the sequential five-step process set forth in 20 C.F.R. § 404.1520. In step one, the Commissioner determines whether the claimant currently engages in "substantial gainful activity." 20 C.F.R. § 1520(b). Present engagement in substantial activity precludes an award of disability benefits. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). In step two, the claimant must demonstrate that the claimant suffers from a "severe impairment." 20 C.F.R. § 1520(c). Impairments lacking sufficient severity render the claimant ineligible for disability benefits. See Plummer, 186 F.3d at 428. Step three requires the Commissioner to compare medical evidence of the claimant's impairment(s) to the list of impairments presumptively severe enough to preclude any gainful activity. 20 C.F.R. § 1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Plummer, 186 F.3d at 428. Between steps three and four, the ALJ determines the claimant's RFC. 20 C.F.R. § 404.1545. Step four requires the ALJ to consider whether, based on his or her RFC,

the claimant retains the ability to perform past relevant work.
20 C.F.R. § 1520(e). If the claimant's impairments render the
claimant unable to return to the claimant's prior occupation, at
step five the ALJ will consider whether the claimant possesses
the capability to perform other work existing in significant
numbers in the national economy, given the claimant's residual
functional capacity, age, education, and work experience. 20
C.F.R. §§ 1520(g), 404.1560(c).

**B.  Analysis**

Plaintiff argues that the ALJ erred by: (1) failing to
properly evaluate and weigh the medical evidence of record,
including the opinions of Plaintiff's treating physician; (2)
failing to make a finding of disability based on the existence
of a listing level impairment consistent with Listing 1.04 in
the Listings of Impairments; and (3) failing to consider all of
Plaintiff's impairments in assessing her RFC. The Court
addresses each argument in turn.

1.  <u>Substantial evidence supports the ALJ's decision
to discount Plaintiff's treating physician, Dr.
Savarese</u>

Plaintiff first avers that the ALJ erred in formulating her
RFC between steps three and four by assigning "little weight" to
the opinion of Plaintiff's treating endocrinologist, Dr.
Savarese. (Pl.'s Br. at 7-10.) Specifically, Plaintiff argues
that the ALJ improperly discounted Dr. Savarese's March 5, 2014

opinion that, because of her symptoms, Plaintiff would need to take unscheduled breaks, possibly two to three times per day and lasting up to thirty minutes at a time, and that Plaintiff would also likely miss one or two days of work per month. (Id. at 8-9) (citing R. at 976-78). For the reasons explained below, the Court finds that substantial evidence supports the ALJ's treatment of Dr. Savarese's opinion.

SSR 96-8p dictates that the RFC assessment be a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." In order to meet the requirements of SSR 96-8p, the ALJ "must specify the evidence that he relied upon to support his conclusion." Sullivan v. Comm'r of Soc. Sec., No. 12-7668, 2013 WL 5973799, at *8 (D.N.J. Nov. 8, 2013). Moreover, the ALJ's finding of RFC must be "accompanied by a clear and satisfactory explanation of the basis on which it rests." Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)).

"[T]he ALJ — not treating or examining physicians or State agency consultants — must make the ultimate disability and RFC determinations." Chandler, 667 F.3d at 361; see also 20 C.F.R. §§ 404.1527(e)(1). The ALJ is entitled to weigh all the evidence in making his or her finding. Brown v. Astrue, 649 F.3d 193, 196 (3d Cir. 2011). It is established that, "[a]lthough treating and

examining physician opinions often deserve more weight . . .
[t]he law is clear . . . that the opinion of a treating
physician does not bind the ALJ on the issue of functional
capacity." <u>Chandler</u>, 667 F.3d at 361 (citing <u>Brown</u>, 649 F.3d at
197 n.2). Where inconsistency in evidence exists, the ALJ
retains significant discretion in deciding whom to credit.
<u>Plummer</u>, 186 F.3d at 429. However, the ALJ "cannot reject
evidence for no reason or for the wrong reason." <u>Id.</u> (quoting
<u>Mason v. Shalala</u>, 994 F.2d 1058, 1066 (3d Cir. 1993)); <u>Cotter</u>,
642 F.2d at 704-05.

In determining Plaintiff's RFC, the ALJ carefully
considered and thoroughly discussed all available medical
records and the opinions of several doctors who examined
Plaintiff, including Dr. Savarese. (R. at 31-39.) Ultimately,
the ALJ assigned "little weight" to Dr. Savarese's opinion after
finding "it is a gross overstatement of [Plaintiff's] mental
health limitations, the limiting effect(s) of her experience of
pain/other symptoms and her physical limitations," and because
"[t]he record simply does not corroborate Dr. Saverese's opinion
and does not reveal the amount or frequency of positional
changes that would have been observed in office visits if
[Plaintiff] were limited as suggested in this opinion." (R. at
38.)

Substantial evidence supports the ALJ's decision to discount Dr. Savarese's opinion. For example, Dr. Savarese's opinion was inconsistent with treatment notes from Plaintiff's pain management physicians showing she had normal muscle strength and was able to walk on her heels and toes (R. at 705, 715, 721, 727, 738, 744, 750, 756, 802, 827, 834-35, 841-42, 848-49, 855-56, 862, 868, 874, 880, 886, 892), as well as Dr. Dwyer's treatment notes indicating that Plaintiff walked with a normal gait, had no swelling, warmth, or erythema in her joints, and had full range of motion in all joints with the exception of generalized tenderness in her upper and lower extremities with some light touch sensation changes in her lower extremity consistent with known diabetic neuropathy. (R. at 956, 959, 961.) Dr. Savarese's opinion was also inconsistent with Dr. Wahl's examination (R. at 532), and the opinions of the State agency medical consultants. (R. at 134-35, 164-66.) On this record, the ALJ did not err.

> 2.  Substantial evidence supports the ALJ's step three finding that Plaintiff did not meet the requirements of Listing 1.04

Plaintiff next argues that the ALJ failed to make a finding that Plaintiff meets or equals a level impairment consistent with Listing 1.04A. (Pl. Br. at 10-13.) To that end, Plaintiff maintains "there is sufficient evidence in the record that meets or equals a Listing level impairment consistent with 1.04(A)."

Listing 1.04A. (Id. at 12.) As relevant here, the Listing requires that a claimant have:

> **_Disorders of the spine_**. (e.g., herniated nucleus pulposus, spinal arachnoiditis, osteoarthritis, degenerative disc disease, facet arthritis, verbal fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). . . .

20 C.F.R. §§ 404.1512(g), 404.1560(c). The ALJ found:

> Although [Plaintiff] has degenerative disc disease of the cervical and lumbar spine, a thorough review of the medical evidence fails to reveal (a) **neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss**; (b) spinal arachnoiditis, requiring the need to change positions/ posture more than once every two hours; nor (c) an inability to ambulate effectively.

(R. at 31) (emphasis added). The ALJ's finding is consistent with the notes of several physicians that concluded Plaintiff had full strength with no evidence of atrophy. (R. at 434, 437, 532, 705, 715, 721, 727, 738, 744, 750, 745, 802, 808, 815, 821, 827, 834–35, 841–42, 848–49, 855–56, 862, 868, 874, 880, 886, 892.) Accordingly, substantial evidence supports the ALJ's findings regarding Listing 1.04.

3.   The ALJ adequately considered all of Plaintiff's
     "severe" and "non-severe" impairments in
     formulating her RFC

Finally, Plaintiff argues that the ALJ failed to properly

consider all of Plaintiff's "severe" and "non-severe"

impairments in formulating her RFC. (Pl. Br. at 13-18.)

Specifically, Plaintiff avers that the ALJ overlooked, ignored,

or improperly evaluated Plaintiff's cervical and lumbar

radiculopathy, mental impairments, lupus, and peripheral

neuropathy. To the contrary, the Court finds that substantial

evidence supports the ALJ's determination that, notwithstanding

these conditions, Plaintiff could perform a range of sedentary

work.

Between steps three and four, the ALJ is required to assess

all of the claimant's impairments – even ones that are not

"severe" – in combination, when making the RFC determination.

See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your

medically determinable impairments of which we are aware,

including your medically determinable impairments that are not

'severe,' as explained in §§ 404.1520(c), 404.1521, and

404.1523, when we assess your residual functional capacity.").

SSR 96-8p is clear about what the ALJ must consider:

> In assessing RFC, the adjudicator **must** consider limitations
> and restrictions imposed by **all** of an individual's
> impairments, even those that are not "severe." While a "not
> severe" impairment(s) standing alone may not significantly
> limit an individual's ability to do basic work activities,
> it may—when considered with limitations or restrictions due

to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8p (emphasis added); see also Soboleski v. Comm'r of Soc. Sec., 2015 WL 6175904, at *2 (D.N.J. Oct. 20, 2015) (explaining that a finding of non-severity "does not obviate the need for a separate analysis of how Plaintiff's impairment affects her RFC"). The ALJ must therefore consider all relevant evidence when determining an individual's RFC. See, e.g., Fargnoli, 247 at 41.

Here, the ALJ accounted for all of Plaintiff's "severe" (R. at 32-39) and "non-severe" impairments (R. at 29-31), before finding that she possessed the RFC to perform "sedentary work," except that:

> [S]he can stand/walk 2 hours in an 8-hour workday; sit 6 hours in an 8-hour workday (but requires the opportunity to switch positions for 5 minutes per hour); lift/carry up to 10 pounds; occasionally climb ramps/stairs, but never climb ladders, ropes or scaffolds; occasionally stoop, kneel, crouch and crawl and occasionally use of [sic] foot controls/pedals. She cannot reach overhead or tolerate any exposure to extreme heat/cold. Finally, she can only occasionally push/pull with the feet and requires a cane to ambulate.

(R. at 31.) As the ALJ explained:

> In sum, the above [RFC] assessment is supported by [Plaintiff's] broad range of daily activities, her good response to pain medications, her physical examinations (as documented above) and the opinion evidence, as set forth above. Considering the

25

> combination of her neuropathy and spinal impairments,
> I find it prudent to limit her to a range of work at
> the sedentary exertional level, but with the
> additional restrictions adopted herein. Though her
> cane was not prescribed, giving [Plaintiff] the
> benefit of the doubt, I have accommodated [her]
> purported need for this device in the above [RFC].
> Finally, in light of her limited and painful range of
> motion of her shoulders and purported difficulty with
> overhead reaching, I find it prudent to limit
> [Plaintiff] to work with no overhead reaching and
> lifting/carrying up to 10 pounds.

(R. at 39.) The Court finds that the ALJ fully considered all of

Plaintiff's severe and non-severe impairments, including her

cervical and lumbar radiculopathy, mental impairments, lupus,

and peripheral neuropathy, and reasonably determined that

Plaintiff could perform sedentary work with the limitations set

forth in the RFC. Accordingly, substantial evidence supports the

ALJ's treatment of Plaintiff's impairments in the formulation of

her RFC.

## V.    CONCLUSION

For the foregoing reasons, the ALJ's decision will be

affirmed. An accompanying order will be entered.


**December 21, 2018**                          **s/ Jerome B. Simandle**
Date                                            JEROME B. SIMANDLE
                                                U.S. District Judge